Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, April 14, 2014 2:37:32 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHARLES F. FUNKHOUSER and | ) | |
| MONICA B. FUNKHOUSER, | ) | Case No. 09-1297 |
| | ) | |
| Debtors. | ) | Chapter 7 |
| | ) | |
| | ) | |
| JEFFREY SANTACROCE and | ) | |
| SARAH SANTACROCE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 13-18 |
| | ) | |
| CHARLES F. FUNKHOUSER and | ) | |
| MONICA B. FUNKHOUSER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

By their Motion for Extension of Time to File Notice of Appeal of Order Dated January 22, 2014 ("Motion for Extension of Time"), Charles and Monica Funkhouser[1] seek an extension of time under Fed. R. of Bankr. P. ("Rule") 8002(c) to appeal this court's January 22, 2014 order determining their debt to Jeffrey and Sarah Santacroce to be nondischargeable. The Santacroces object based primarily upon the notion that an extension of time will prejudice their interests.

---

[1] So the record is clear, the Funkhouser's filed their motion *pro se*. Shortly before the hearing on their motion, Jacob I. Weddle moved to appear on their behalf *pro hac vice*. Mr. Weddle also appeared at the April 3, 2014 hearing on the motion, at which time it became clear that he drafted the Funkhousers' motion.

1

For the reasons stated herein, the court will deny the Funkhouser's Motion for Extension of Time.

## I. BACKGROUND

On March 18, 2013, the Santacroces, acting *pro se*, commenced this adversary proceeding against the Funkhousers seeking to have their $100,000.00 judgment against the Funkhousers — entered in their favor by the Circuit Court of Maryland for Frederick County — deemed nondischargeable under § 523(a)(2)(A).[2] The Funkhousers contested the relief sought, and the court ultimately conducted a trial on the matter on January 16, 2014. At trial, the court heard testimony from several witnesses and considered several exhibits. Immediately afterwards, the court deliberated and then orally delivered its decision. The court subsequently entered its January 22, 2014 order, which memorialized its determination that the debt owed by the Funkhousers to the Santacroces is nondischargeable.

Immediately following the trial in this proceeding, the Funkhousers notified their then-counsel, William A. O'Brien, of their desire to appeal the court's determination.[3] According to the Funkhousers' unrebutted testimony, Mr. O'Brien directed them to contact him during the week following the trial; that was apparently the last communication the Funkhousers had directly with him. The Funkhousers testified that they made several attempts to contact Mr. O'Brien at his office via telephone but were never able to speak directly with him; they were only successful in talking to his staff. In fact, they learned that Mr. O'Brien was not in town having departed for his son's

---

[2] The Santacroces did not articulate a specific basis for nondischargeability under § 523. Courts, however, have consistently held that a *pro se* litigant's pleadings are to be read more liberally than pleadings drafted by an attorney, *Pachtell v. Option One Mortgage Corp.*, 336 B.R. 1, 12 (Bankr.D. Mass 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1971)), and given a fair and meaningful consideration. *In re Laredo*, 334 B.R. 401, 408 (Bankr.N.D. Ill. 2005)(citation omitted). The court therefore construed their request for relief liberally as a complaint under § 523(a)(2)(A) based upon the allegations therein.

[3] Mr. O'Brien did not respond to the Motion for Extension of Time or appear at the hearing upon it. He represented the Funkhousers throughout their bankruptcy case and through the trial in this adversary proceeding. Although Mr. Weddle now represents the Funkhousers, at least regarding their Motion for Extension of Time, and it appears that the Funkhousers have fired Mr. O'Brien, he remains counsel of record in the bankruptcy case, which is now closed, and this adversary proceeding, having not sought to withdraw.

2

wedding without acting on the appeal. They testified that at no time did Mr. O'Brien advise them of an appeal deadline. Ultimately, the Funkhousers contacted Mr. Weddle, who now represents them at least in conjunction with the extant Motion for Extension of Time, which the Funkhousers filed on February 21, 2014.[4]

## II. DISCUSSION

Generally, a party wishing to appeal an order of this court shall do so within fourteen days of the entry of the order being appealed. Rule 8002(a). Except in circumstances not applicable here, the court may extend the time for filing a notice of appeal. Rule 8002(c)(1). A party seeking such relief must request an extension before the time for filing a notice of appeal expires, "except that such a motion filed not later than 21 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect." Rule 8002(c)(2).

Here, because the Funkhousers filed their Motion for Extension of Time after the 14-day period under Rule 8002(a) expired, but within the time prescribed by Rule 8002(c)(2), the court can extend the time within which they can appeal the court's January 22, 2014 order only upon a showing of "excusable neglect." *Id*. "Excusable neglect" is not defined by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure. In determining whether a party has made a showing of excusable neglect in the context of an untimely notice of appeal, the Fourth Circuit applies the test articulated by the Supreme Court in *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380 (1993). *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996). The test consists of a two-prong inquiry. *See Alan Votta Constr. Inc., v. Kirkbride (In re Kirkbride)*, Adversary No. 08-00211-8-AP, 2009 WL 3247837, at *2 (Bankr. E.D.N.C. Oct. 1. 2009) (citing *Pioneer*, 507 U.S. at 388, 395) ("First, the court must determine whether the failure to timely file the notice of appeal was due to neglect, then it must determine whether the neglect is excusable.").

Determining whether neglect is "excusable" is an equitable exercise, with the court considering all relevant circumstances, including "the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay,

---

[4] Because Mr. O'Brien did not respond to the allegations in the Funkhousers' Motion for Extension of Time or appear at the hearing thereon, the court's factual findings are based solely upon the uncontroverted evidence provided by the Funkhousers.

3

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. The reason for the delay is the most important factor. *Id*. at 534 (citation omitted). Although "excusable neglect" is an "elastic concept," *Pioneer*, 507 U.S. at 392, "a district court should find 'excusable neglect' only in *extraordinary cases* where injustice would otherwise result." *Thompson*, 76 F.3d at 534 (citation omitted); *see In re Malone*, C/A No. 10–2470-HB, 2011 WL 4542692, at *3 (Bankr. D.S.C. Sept. 28, 2011) (citation omitted) ("[G]iven the policy favoring finality of bankruptcy orders, acceleration of appeals, and the like, which underlies the time periods and requirements of Rule 8002, the equitable standard adopted by *Pioneer* should, in this context, *be rigorously applied so that execusable neglect is only infrequently found*."). Notably, litigants attempting to show "excusable neglect" are accountable for the acts and omissions of their chosen counsel. *Pioneer*, 507 U.S. at 396-97.[5]

Here, the Funkhousers satisfied the first prong of the "excusable neglect" inquiry. Mr. O'Brien's failure to either file a notice of appeal or to take other steps to protect the interests of the Funkhousers, including advising them of the critical appeal deadline if he was not going to act on their behalf, constitutes neglect. The issue is whether his neglect was "excusable." Considering the factors relevant to such a determination, the court finds that the relative danger of prejudice to the respective parties, although a close question, weighs in the Funkhousers' favor because the denial of relief to the Funkhousers will adversely affect their ability to pursue an appeal of an admittedly

---

[5] Interestingly, the Funkhousers rely on *Robinson v. Wix Filtration Corp.,* 599 F.3d 403, 421 (4th Cir. 2010), to support their contention that they should not bear responsibility for Mr. O'Brien's neglect. Their reliance in that regard is wholly misplaced, however, because the majority opinion in *Robinson* simply reiterated the principle set forth in *Pioneer*:

> [A]s the majority opinion fully explains, the agency theory of legal representation is long established. The majority opinion does no more than make explicit that which common sense and mature judgment make plain: lawyers have an obligation to their clients, to their profession, and to the court to pay attention. For practitioners in the legal profession, unlike those in some others, he who fails to pay attention may one day have to pay up.

*Robinson*, 599 F.3d at 414 (Davis, J. concurring). In fact, without proper attribution, the Funkhousers rely upon Judge King's dissent in *Robinson*, making their argument unpersuasive; if not a misrepresentation of the case's holding. Counsel is admonished to refrain from such erroneous advocacy.

significant adverse judgment. Conversely, although granting the Funkhousers' motion may impede the Santacroces' ability to execute upon their judgment and cost them additional expense and delay in that regard, those costs are inherent in defending an otherwise timely appeal; thus the prejudice to the Santacroces is not inordinate. That is not to say, however, that the Santacroces will not be prejudiced, particularly given the fact that they waited until the relevant time for an appeal was exhausted and only acted to enforce their judgment, which they have pursued for many years and through multiple courts, after contacting the Clerk of Court and being informed that the Funkhousers had not timely appealed the court's determination of nondischargeability. Also weighing in the Funkhousers' favor is the fact that their request for relief appears to be brought in good faith. That leaves consideration of the reason for the delay — the most important factor.

In that regard, the Funkhousers each testified that they notified Mr. O'Brien immediately after the trial in this proceeding of their desire to appeal the court's finding of nondischargeability. According to their uncontroverted testimony, Mr. O'Brien directed them to call his office the following week but he neither timely filed a notice of appeal on their behalf nor advised them of their right to do so and the relevant deadline. The record, however, is devoid of any circumstances making the neglect in this case "excusable;" that is to say, there is no evidence showing that Mr. O'Brien's conduct was anything other than, in the words of the Fourth Circuit, "inexcusable run-of-the-mill inattentiveness by counsel." *Thompson*, 76 F.3d at 535. At bottom, the Funkhousers offer blame — that their failure is Mr. O'Brien's fault — rather than an excuse. But it is precisely Mr. O'Brien's conduct that is under scrutiny and no evidence was offered in that regard that demonstrates excusable neglect. *See Pioneer*, 507 U.S. at 397 ("[I]n determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable."). The court is aware that its decision may ultimately leave the Funkhousers without an effective ability to appeal its finding of nondischargeability in this proceeding, but their remedy lies elsewhere given the circumstances of this case and the high bar set by the Supreme Court and adopted by the Fourth Circuit to show "excusable neglect."

### III. CONCLUSION

Based upon the foregoing, the court will enter a separate order denying the Funkhousers' Motion for Extension of Time.

5